Shaw, C. J.
1. The first question is, whether this appeal was rightly taken to the supreme judicial court. The defendant, administrator of Benjamin Mills, had represented the estate of his intestate insolvent; the appellant, as the executor of William H. Sabine, presented his claim to an amount much exceeding $300, which was rejected by the commissioners; whereupon the plaintiff took an appeal to this court. The revised statutes direct this proceeding by appeal from the decision of the commissioners, in place of the former method of bringing an action by writ on the original cause of action, in order that a claim against an insolvent estate may be tried, •defended and decided according to the rules and course of law The provision is, that “ if the demand shall be such as might be carried by appeal, in a common personal action, from the court of common pleas to the supreme judicial court, the appeal from the commissioners shall be made directly to the supreme judicial court.” Rev. Sts. c. 68, ■§> 8. This is imperative, and *275 definitely fixes the case in which it shall be carried to the supreme judicial court; and the succeeding clause gives the court full jurisdiction to try and determine it, in like manner as if an action had been brought therefor. This description of the demand, which determines when the appeal shall go to the supreme judicial court, manifestly refers to Rev. Sts. c. 82, $ 6, which allows such appeal, in any personal action wherein the demand shall exceed $ 100. Probably the circumlocution was used, instead of the precise sum, in order that if afterwards the right of appeal should be further limited, in a personal action, the regulation of the appeal from commissioners should follow and change with it. By the subsequent St. of 1838, c. 165, this was changed, and the right of appeal was further limited to cases in which the demand should exceed $300. It is ai reasonable construction of the statute first above cited, that the appeal from the decisions of commissioners of insolvency would change accordingly; lying to the supreme judicial court, if the claim exceed $ 300, and to the court of common pleas, if not more than that sum.
Then came St. 1840, c. 87, upon which the present question arises. It provides, <§> 4, that there shall be no appeal from any judgment of the court of common pleas, upon the verdict of a jury. Now, the argument is, that as the right of appeal to the supreme judicial court from the commissioners of insolvency depends on a right to appeal from the court of common pleas to the supreme judicial court upon a similar demand, and this right is taken away in all cases, by the latter act, in personal actions, it follows that it is so in case of an appeal from the com missioners. But it appears to us that this is too hasty a conclusion, and is not the true construction of the statute. Strictly speaking, the right of appeal from the court of common pleas is not taken away, on demands exceeding $300, but only in case of judgments on the verdict of a jury. The truth is, that by the late act, the right of appeal is made to depend, not on the amount of the demand, but on the question whether the iudgment is on matter of law or of fact; so that the amount of the demand ceases to be a test of the right of appeal On the *276 construction proposed, it might be contended, perhaps with equal force, that as all cases are now open to appeal, when the judgment is on matter of law, and as it cannot be known, when the action is to be entered, whether the judgment will be on matter of law or on the verdict of a jury, all cases in personal actions are open to appeal, and therefore that all cases of appeal from the commissioners of insolvency must be to the supreme judicial court.
It is manifest, we think, from the whole tenor of the statute, that it was not the intention of the legislature to change the forum before indicated for the trial of demands against insolvent estates. It was certainly not done in terms, and if done at all, it is by inference and implication. If the question stood merely upon the clause cited, it might be more doubtful; but there is another clause of the statute of 1840, which tends to explain it. It directs, § 1, that “ the supreme judicial court shall continue to have concurrent jurisdiction with the court of common pleas, in all cases in which they now have such concurrent jurisdiction, and shall continue to have original and exclusive jurisdiction in all cases in which they now have such original and exclusive jurisdiction.” It is a sound rule of construction, that every part of a statute must be taken into consideration, in eonstruing any part; and that such construction shall be put on the whole, if practicable, that each clause shall have effect. The clause in regard to the right of appeal from the court of common pleas to the supreme judicial court, and the clause respecting the continuance of the jurisdiction of the supreme judicial court, may be well construed together, so as to direct, that notwithstanding the modification of the right of appeal, in personal actions, yet in all other respects, the courts respectively shall continue to have the same jurisdiction which they then had. It is obvious that, by force of the existing acts, the supreme judicial court had then exclusive jurisdiction of appeals from the commissioners of insolvency, on demands over three hundred dollars; and we think that, by force of the act of 1840, they continued to have it.
2. But by far the most material question is, whether the *277 deposition of Royal Stewart, tendered by the plaintiff, was rightly admitted. It was objected by the defendant, that this deposition ought not to have been received, because the said Stewart was interested in the event of the suit, at the time of the trial, though not so at the time the deposition was taken The facts are, that this suit was commenced by William H„ Sabine ; that during the progress of it he died, and his executor came in to prosecute. The deposition was taken before his death. The interest of Stewart in the estate is thus stated: His wife was the daughter of William H. Sabine, who, by his will, gave her a legacy payable to herself, as a feme sole; that she died before the trial; and that her husband, the deponent, as her heir, had become interested in the estate, as being entitled to such legacy.
Here it is manifest, that the interest is indirect; that it depends on the event of the estate of the plaintiff’s testator being solvent; and that it devolved upon the witness after he had given his deposition, without any act or default of his own, or of the party proposing to use his testimony, but by the acts of providence, and the operation of law. The court are of opinioi; that when a witness has thus become interested, after the deposition is taken, it may be used at the trial. In the first case ir. the Massachusetts reports, Gold v. Eddy, 1 Mass. 1, it was sc admitted, although the deponent had himself become party to the suit, as administrator. It is true that the court rest their opinion, in some measure, on the statute of reviews, containing directions, which imply that each party is entitled to the evidence before used; but this, of course, must be limited to competent evidence. It is admitted, in the same case, that if the deponent were present at the trial of the review, and had not become interested, the deposition could not be read. It is therefore not merely because the evidence had been Defore used, but because the witness had become interested, and therefore incompetent, that the deposition, taken when that objection did not exist, and when he is presumed not to have been influenced by the bias of interest, is received as evidence. The case therefore, we think, is an authority to the general principle.
*278 In chancery, such a deposition is admissible, and in trials at law of issues out of chancery. Greenl. on Ev. § 168. 1 Stark. Ev. 263. As bearing on the general question, see Baker v Lord Fairfax, 1 Stra. 101. Glynn v. Bank of England, 2 Vessen. 42 Holcroft v. Smith, 1 Eq. Cas. Ab. 224. Goss v Tracy, 1 P. W. 289.
This rule may not be considered as extending to the case of a deposition, taken in perpetuam, or otherwise, of one who may expect to have an interest afterwards, or with a view to a future controversy; as where one gives evidence by deposition, in regard to the title of his father, or other ancestor, and after-wards the property becomes his own by descent. It might enable a party to make evidence for himself contrary to the general principles of evidence. Tilley’s case, 1 Salk. 286. 2 Ld. Raym. 1008. Such a question may be properly reserved until it arises. The present decision is limited to a case where a deposition is taken in due course,, for a suit pending, or immediately to be commenced, in good faith, to be used in such suit, and the deponent, before the trial, has an interest devolved upon him by no act of his own or of the party offering the deposition.
3. Another objection was made to this, and also to Collins’s deposition, on the ground that the succeeding interrogatories were read by the witnesses, before the preceding ones were answered; and that this appears from the depositions themselves.
The certificate of the caption states that the directions accompanying the commission had all been complied with. Still there are answers leading to the belief, that the deponents had read some interrogatories before they answered previous ones. If the subsequent interrogatories were not read to the witnesses by the magistrate, or if they were not permitted by him to read them, there was no violation of the rule. But, without relying upon that ground, the court are of opinion, that the rules, so far as they are designed to direct and regulate the conduct of the commissioner, in the mode of taking depositions, are directory, in the nature of a letter of instructions accompanying the *279 dedimus potestatem, respecting the manner in which the power conferred is to be executed, and are not conditions precedent, without an exact compliance with which, the deposition must be rejected. Reed v. Boardman, 20 Pick. 441. Amherst Bank v. Root, 2 Met. 522.
It is to be considered that these commissions are to go to foreign places, often governed by laws and usages widely different from our own; and therefore some such form of specific instructions is highly expedient, to insure regularity and uniformity in the mode of taking evidence under them. But if they should be regarded as conditions, the more minute and exact the directions, the more difficult it would be to obtain a deposition which would be admissible. If, indeed, there should appear such a considerable departure from the directions as to show a gross neglect or wilful violation of duty, or to indicate any partiality, misconduct or impropriety on the part of the commissioner, it will be the duty of the judge at the trial to reject the deposition.
4. One other objection was taken by the defendant, which was, that the drafts were not sufficiently identified by annexing copies to one of the depositions, and that the originals should have been annexed. If the originals are annexed, they must rema.n annexed until the trial; and it would be impossible for the party, having occasion to take several depositions in different places, to annex the originals to all of them. But we think there is no ground for the exception. It is observable that this is the precise mode that is adopted by notaries in protesting foreign bills; and their protests are of the highest authority, as evidence of demand and notice. They identify the bill, by indorsing a copy of it on the protest. The deposition proving that a certain note was presented, of which a copy is annexed, is competent evidence, because it proves the presentment of a note of that date, amount and time of payment. Whether it is the same with the one in suit, is a question of fact on the evidence. If no other note of the same description is shown to have been in existence, the evidence would be very strong, and, if not controlled by other proof, conclusive Here the only *280 question is of the competency of the evidence; and the court are of opinion that it was competent.

Exceptions overruled, and judgment to be entered and certified to the judge of probate conformably to the statute.